UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60033-CR-COHN

UNITED STATES OF AMERICA

vs.

UBS AG

Defendant.
_____/

## AMENDMENT TO DEFERRED PROSECUTION AGREEMENT

The United States, by and through the United States Department of Justice ("DOJ") Tax Division and the United States Attorney's Office for the Southern District of Florida (the "Government"), and defendant UBS AG ("UBS"), by its Group General Counsel and undersigned attorneys, hereby enter into this Amendment (the "Amendment") to the Deferred Prosecution Agreement (the "Agreement") approved by this Court on February 18, 2009, pursuant to paragraph 27 of the Agreement:

The following new paragraphs 5.1 and 5.2 (which are to be inserted after paragraph 5) are hereby added to the Agreement:

5.1.   In the course of implementing the Exit Program pursuant to paragraph 5 of the Agreement, UBS has identified certain categories of accounts, services or products that raise special issues under applicable Swiss or other local laws, regulations or guidelines, or otherwise present practical impediments to immediate termination. For these categories of accounts, services or products, the Exit Program shall be implemented consistent with the undertakings below unless it is subsequently determined that the account holder is not or is no longer a "U.S. Person"

(as used herein and as defined in paragraph 5 of this Agreement as a United States resident private client, including an offshore trust, foundation, or non-operating company with one or more U.S. individuals as a beneficial owner):

    (a).    With respect to any account maintained at UBS that, based on the account documentation on file with UBS, is last known to have been held by a U.S. Person and that, in accordance with applicable laws, regulations and guidelines, has been classified as "dormant" prior to August 31, 2010, due to the inability of UBS to establish and/or maintain contact with the account holder(s), UBS will implement and maintain the following measures (unless it is subsequently determined that the account holder is not or is no longer a U.S. Person):

    (i).    UBS will only provide banking or securities services in connection with any such account to the extent that such services are required pursuant to applicable laws, regulations and guidelines;

    (ii).    UBS will assign such accounts to a specialized unit; employees and supervisors of such specialized unit will be the only UBS employees with authority to classify such accounts as "dormant"; and,

    (iii).    At such point as contact with the account holder(s) (or other person(s) with authority over the account) is re-established, UBS will promptly proceed to transfer or terminate the account relationship consistent with the exit undertaking set forth in the first sentence of paragraph 5 of this Agreement ("the Exit Undertaking") (unless the account fits within one of the special categories set forth below in subparagraphs 5.1(b)-(k)).

    (b).    With respect to any account maintained at UBS that is held by a U.S. Person and for which UBS has determined that such account holder may be treated as having re-

ceived a notice of termination pursuant to the Exit Program, but for which UBS has been unable to obtain transfer or closing instructions:

 (i). UBS will cease providing any banking or securities services in connection with such accounts no later than 45 days after UBS has sent notice to the relevant account holder(s), except to the extent that such account later becomes "dormant," under applicable laws, regulations and guidelines, in which case such account will be treated in accordance with subparagraph 5.1(a) above.

 (c). With respect to any beneficial interest held by a U.S. Person in a retirement account known as a "Second Pillar" or "Third Pillar" account under Swiss law[1] (or the similar type of account known as a Superannuation Fund account under the law of Australia) and that is maintained at UBS or any subsidiary or affiliate of UBS (such as the Vested Benefit Foundation of UBS AG or Fisca Pension Fund Foundation of UBS AG), UBS will implement and maintain the following measures:

 (i). At the time that UBS AG or the aforementioned UBS AG affiliates obtains knowledge (e.g., by the account holder submitting new documentation indicating a relevant change in U.S. residency) that such interest holder is a U.S. Person and has moved temporarily or permanently to the United States, UBS AG or the aforementioned UBS AG affiliates will within 30 days provide notice to such interest holder disclosing that (1) a Second or Third Pillar securities account (i.e., one holding one or more UBS investment funds or any other securities investments) is not regulated under the securities laws of the United States; and (2) neither

---

[1] The Swiss retirement system is predicated on three so-called "Pillars." The First Pillar is similar to Social Security benefits in the United States. The Second Pillar is similar to a company pension plan in the United States and is funded by mandatory contributions of employers and employees. The Third Pillar is similar to 401(k) and IRS plans in the United States. Under Swiss law, persons working in Switzerland are obliged to open Second Pillar accounts and are eligible to open Third Pillar accounts. Swiss law requires that both Second and Third Pillar accounts be maintained only at financial institutions that meet the requirements of the Swiss Federal Banking Act and that are regulated by the Swiss Financial Market Supervisory Authority.

UBS nor the aforementioned UBS AG affiliates are registered with the SEC as a broker-dealer or investment adviser.

(ii).   For those Second and Third Pillar accounts for which UBS AG or the aforementioned UBS AG affiliates by August 15, 2010 identifies an interest holder that is a U.S. person who is temporarily or permanently residing in the United States, UBS AG or the aforementioned UBS AG affiliates will send the communication described above in paragraph 5.1(c)(i) by August 31, 2010.

(d).   With respect to any account maintained at UBS that is held by an individual non-U.S. person who is temporarily present in the United States, including for purposes of work, pursuant to a temporary, non-immigrant U.S. visa (including but not limited to visa types A, E, F, G, H, I, J, M and Q), UBS will request, upon expiration of the account holder's temporary visa, documentation evidencing a new or renewed visa or other appropriate documentation demonstrating residence outside of the United States. If UBS does not receive such documentation, UBS will transfer or terminate the account relationship consistent with the Exit Undertaking.

(e).   With respect to any account maintained at UBS that is held by a U.S. Person not falling under subparagraph 5.1(d), 5.1(g), 5.1(j) or 5.1(k) and that is required to be maintained in order to service an existing mortgage or other loan originated by UBS, UBS will implement and maintain the following measures:

(i).   UBS will not provide any banking or securities services in connection with any such account except to the extent required to service such existing mortgage or loan and will transfer or terminate such account relationship upon the maturity of such mortgage or loan consistent with the Exit Undertaking; and,

(ii). UBS will not open any new mortgage or other loan-related account for any U.S. Person unless such person falls under subparagraph 5.1(d), 5.1(g), 5.1(j) or 5.1(k).

(f). With respect to any securities services account maintained at UBS Swiss Financial Advisers AG ("SFA"), an investment advisor registered with the SEC, that is held by an offshore trust, foundation, or non-operating company with one or more U.S. individuals as a beneficial owner and for which the account holder has provided a Form W-8BEN to SFA, SFA will implement and maintain the following measures:

(i). SFA will obtain the following documentation: (1) IRS Form(s) W-9, 5471, 926 or other such form containing the name and Taxpayer Identification Number ("TIN") of each U.S. individual beneficial owner of such an account holder; and (2) written consent by the account holder and each U.S. individual beneficial owner of such account holder to disclose account-related information (including the account holder's or beneficial owner's name and TIN) to the IRS;

(ii). SFA will submit the following information to the IRS upon written request by the IRS directed to UBS Swiss Financial Advisors AG, attn. CEO Office, P.O. Box 8098, Zurich, Switzerland: (1) Form 1042-S reporting for payments to the account holder; and (2) annual disclosure of the name(s) and TIN(s) of each U.S. individual beneficial owner of such an account holder; and,

(iii). If the account holder and/or the U.S. individual beneficial owner(s) of such account holder do not provide the necessary documentation and consent described above, or revoke such documentation or consent, SFA will transfer or terminate the account relationship consistent with the Exit Undertaking.

(g). With respect to any banking services account maintained at UBS by an individual U.S. Person who also maintains a securities services account at SFA, UBS will implement and maintain the following measures:

(i). UBS will require such U.S. Person to submit a fully executed IRS Form W-9 for such account; and,

(ii). As soon as reasonably practicable, UBS will provide information reporting to the IRS with respect to such account in a manner consistent with the requirements set forth in Sections 1471-1474 of the Internal Revenue Code of 1986, as amended (the "Code"), or any Treasury Regulations promulgated thereunder, or any other future provision of the Code or any Treasury Regulations promulgated thereunder, or any other guidance published by the IRS on which taxpayers may rely, in each case, that governs information reporting by non-U.S. financial institutions.

(h). With respect to any account maintained at UBS that is held by a U.S. Person and that contains an interest in any private equity product, real estate investment fund or other illiquid product (i.e., a product subject to transfer and/or termination restrictions), and for which a UBS-affiliated entity provides investment, management, administrative or other related services, UBS will implement and maintain the following measures:

(i). UBS will not provide any banking or securities services in connection with such account, except to the extent required to service the relevant illiquid product(s) (e.g., conduct capital calls); and,

(ii). Upon the maturity of the relevant private equity, real estate fund or other illiquid product(s), or as soon as any applicable transfer and/or termination restrictions are

no longer in force, UBS will terminate or transfer such account relationship(s) consistent with the Exit Undertaking.

(i). With respect to any investment advisory account maintained by an individual U.S. Person at UBS Bank (Canada), a Wealth Management entity of UBS, or any other Canadian affiliate of UBS, UBS will continue to service such investment advisory account in accordance with Section 203(b)(3) of the Investment Advisers Act of 1940 and require such U.S. Person to submit, if applicable, a fully executed IRS Form W-9 and will perform such Form 1099 reporting in connection with such account relationship as may be required pursuant to the rules set forth in the QI Agreement, as amended from time to time. If any such U.S. Person does not comply with these requirements, UBS will transfer or terminate the investment advisory account relationship consistent with the Exit Undertaking.

(j). With respect to accounts maintained at UBS that are classified as "Personnel Financial Affairs" or "PFA" accounts held by employees of UBS or their immediate family members, UBS may continue to open and maintain such PFA accounts for employees of UBS who are temporarily working in the United States but will transfer or terminate PFA account relationships, consistent with the Exit Undertaking, as to which it obtains knowledge that the account holder has established permanent residence in the United States.

(k). With respect to any account maintained at UBS that is held by an individual holding a diplomatic position on behalf of the United States at a location outside of the United States (including individuals working at international organizations such as the United Nations), at the time that UBS obtains knowledge that any such account holder has established permanent residence in the United States, UBS will transfer or terminate the account relationship consistent with the Exit Undertaking.

(l). With respect to any account maintained at UBS for which UBS obtains knowledge that the account holder has become (or for which UBS determines that the account holder is) a U.S. Person (e.g., by the account holder submitting new documentation indicating a relevant change in U.S. residency), unless the account fits within one of the special categories set forth above in subparagraphs 5.1(a)-(k), UBS will transfer or terminate the account relationship consistent with the Exit Undertaking.

5.2. Notwithstanding anything in this Agreement to the contrary (including but not limited to paragraphs 5 and 5.1), UBS shall be permitted to provide banking and securities services to (and, for the avoidance of doubt, shall be permitted to open and maintain banking and securities accounts for) any U.S. Person either (i) to the extent that UBS complies with any applicable information reporting requirements set forth in Sections 1471-1474 of the Code, or any Treasury Regulations promulgated thereunder, or any other future provision of the Code or any Treasury Regulations promulgated thereunder, or any other guidance published by the IRS on which taxpayers may rely, in each case, that governs information reporting by non-U.S. financial institutions (collectively, "Applicable Tax Law"), or (ii) to the extent that information reporting with respect to U.S. Persons is not currently required under Applicable Tax Law, UBS voluntarily reports to the IRS on an annual basis the name, address and TIN of such U.S. Person that is an individual (or, in the case of any offshore trust, foundation or non-operating company with one or more U.S. individuals as beneficial owner, the name, address and TIN of such U.S. individual(s)).

JOHN A. DICICCO, ESQ.
Acting Assistant Attorney General
United States Department of Justice
Tax Division

WIFREDO A. FERRER, ESQ.
United States Attorney
Southern District of Florida

UBS AG
Defendant

By: *[signature]*
MARKUS U. DIETHELM, ESQ.
Group General Counsel

WACHTELL, LIPTON, ROSEN, & KATZ

By: *[signature]*
JOHN F. SAVARESE, ESQ.
Counsel to UBS AG

By: *[signature]*
RALPH M. LEVENE, ESQ.
Counsel to UBS AG

Dated: October 14, 2010

JOHN A. DICICCO, ESQ.
Acting Assistant Attorney General
United States Department of Justice
Tax Division

*/s/ Wifredo Ferrer*

WIFREDO A. FERRER, ESQ.
United States Attorney
Southern District of Florida

UBS AG
Defendant

By: _____
MARKUS U. DIETHELM, ESQ.
Group General Counsel

WACHTELL, LIPTON, ROSEN, & KATZ

By: _____
JOHN F. SAVARESE, ESQ.
Counsel to UBS AG

By: _____
RALPH M. LEVENE, ESQ.
Counsel to UBS AG

Dated: October 14, 2010

                                                              */s/ John A. DiCicco*
JOHN A. DICICCO, ESQ.
Acting Assistant Attorney General
United States Department of Justice
Tax Division

                                                            _____
WIFREDO A. FERRER, ESQ.
United States Attorney
Southern District of Florida


UBS AG
Defendant

By: _____
     MARKUS U. DIETHELM, ESQ.
     Group General Counsel

WACHTELL, LIPTON, ROSEN, & KATZ

By: _____
     JOHN F. SAVARESE, ESQ.
     Counsel to UBS AG

By: _____
     RALPH M. LEVENE, ESQ.
     Counsel to UBS AG


Dated: October 14, 2010